## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Deanne Hebrink, Carrie Warne, Keith Klein, Shay Rohde, Joanne Schlotzhauer, and Michele Styndl, | Court File No. 22-cv-_____ |
| *Plaintiffs*, | **COMPLAINT** |
| *vs* | **JURY TRIAL DEMANDED** |
| The Mayo Clinic, a Minnesota non-profit corporation, Mayo Foundation for Medical Education & Research, a Minnesota non-profit corporation, and Mayo Clinic Health System-Northwest Wisconsin Region, a Wisconsin non-stock corporation, | |
| *Defendants*. | |

Plaintiffs Deanne Hebrink ("Plaintiff Hebrink"), Carrie Warne ("Plaintiff Warne"), Keith Klein ("Plaintiff Klein"), Shay Rohde ("Plaintiff Rohde"), Joanne Schlotzhauer ("Plaintiff Schlotzhauer"), and Michele Styndl ("Plaintiff Styndl"), (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendants The Mayo Clinic ("Defendant Mayo"), the Mayo Foundation for Medical Education & Research ("Defendant Mayo Foundation"); and Mayo Clinic Health System-Northwest Wisconsin Region, a Wisconsin Non-stock corporation ("Defendant Mayo Northwest") (all Defendants collectively "Defendants").

### INTRODUCTION

1.     In October, 2021, Defendant Mayo mandated that all its employees, including employees of its related corporations Defendant Mayo Foundation and

Defendant Mayo Northwest, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendants' employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for a religious exemption with their respective employer Defendants to be exempt from taking the Covid-19 vaccination.  Defendants denied the requested religious exemptions.  In addition, Defendants failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating religious exemption requests.  Defendants terminated each of the Plaintiffs' employment based solely on Plaintiffs refusal to take the Covid-19 vaccine. However, only a couple of months after terminating Plaintiffs, Defendants reversed part of their Vaccine Mandate regarding testing, demonstrating that the terminations of Plaintiffs were either unnecessary or a pretext.

2.      Based on Defendants' implementation of the Vaccine Mandate and their refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3.      Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission

("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.      This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6.      This Court has personal jurisdiction over Defendant Mayo Foundation as it is a non-profit corporation operating in and located in the State of Minnesota.

7.      This Court has personal jurisdiction over Defendant Mayo Northwest as it is a non-stock corporation operating in and located in the State of Wisconsin.

8.      Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

9.      Defendant Mayo Foundation is subject to the provisions of Title VII and the ADA because Defendant Mayo Foundation employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.     Defendant Mayo Northwest is subject to the provisions of Title VII and the ADA because Defendant Mayo Northwest employs more than fifteen employees in each

of twenty or more calendar weeks in the current or preceding calendar year under 42

U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

11.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1)

because the actions giving rise to this cause of action occurred in Minnesota and each

Defendant conducts business in the State of Minnesota.

## PARTIES

12.     Plaintiff Hebrink is an Olmsted County, Minnesota resident who worked

for Defendant Mayo as a clinical lab technician.  Plaintiff worked for Defendant Mayo

for 28 years.

13.     Plaintiff Warne is an Olmsted County, Minnesota resident who worked for

Defendant Mayo as a registered nurse.  Plaintiff Warne worked for Defendant Mayo for

nearly 16 years.

14.     Plaintiff Klein is a Wisconsin resident who worked for Defendant Mayo

Northwest as a telecommunication specialist.  He worked for Defendant Mayo Northwest

for about 11 years.

15.     Plaintiff Rohde is a Steele County, Minnesota resident who worked for

Defendant Mayo Foundation as a registered nurse.  Plaintiff Rohde worked for Defendant

Mayo Foundation for seven years.

16.     Plaintiff Schlotzhauer is an Olmsted County, Minnesota resident who

worked for Defendant Mayo as a registered nurse.  Plaintiff Schlotzhauer worked for

Defendant Mayo for over 21 years.

17.     Plaintiff Styndl is a Dodge County, Minnesota resident who worked for Defendant Mayo as a payroll specialist.

18.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

19.     Defendant Mayo Foundation is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

20.     Defendant Mayo Northwest is a Wisconsin non-stock corporation which operates medical facilities in Wisconsin.

## FACTS

21.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendants.

22.     Defendants recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.  On September 28, 2021 the President and CEO of Defendant Mayo (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Defendant's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day.*"

5

23.     However, just two weeks later, Defendants implemented their Vaccine Mandate for Defendants' employees.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

24.     Defendants announced their Vaccine Mandate on October 13, 2021. Defendants' Vaccine Mandate required all staff to become vaccinated against Covid-19, and that if such staff were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

25.     On October 25, 2021, Defendants sent a communication to their employees outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on December 3, 2021, Defendants issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

26.     Defendants announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

27.     However, what Defendants gave with one hand, they took away with the other by proclaiming that "*it is anticipated that a <u>small number of staff will have a qualifying religious exemption</u>*."  (emphasis added)  Defendants further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant <u>does not demonstrate a sincerely held religious belief</u>*, (emphasis added). Further, Defendants declared:  *"[o]nly a <u>small number of staff are expected to qualify for a religious exemption</u>*." (emphasis added).

28.     Defendants thus put themselves in the position of deciding the sincerity of the Plaintiffs' religious beliefs, and determining whether Plaintiffs' beliefs were "religious" or not.

29.     Defendants also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*."  Other medical conditions were preemptively discounted or disregarded.

30.     The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendants wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so <u>please do not share broadly</u>*." (emphasis added).

31.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Hebrink requested a

religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Hebrink also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff's request for reconsideration.  Defendant Mayo did not provide Plaintiff with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff's request for a religious exemption.

32.    Plaintiff Hebrink is a Christian who believes, based on her study of Scripture and prayer, that her body is a Temple of the Holy Spirit. She was made in the image of and likeness of God. She has a duty to honor and care for her body, and it would violate her conscience to take the Covid-19 vaccine which she believes would defile her body.

33.    While Plaintiff Hebrink's request for a religious exemption was denied and she was terminated, the religious exemptions of younger co-workers were granted and the younger workers retained.

34.    Prior to her termination, Plaintiff Hebrink had received excellent job performance reviews including that "Deanne Hebrink is outstanding in every regard." Plaintiff Hebrink received promotions and raises for her outstanding work.

35.    Plaintiff Hebrink contracted Covid-19 and recovered, providing her with natural immunity.  Plaintiff Hebrink also requested that Defendant Mayo test her for antibody protection against Covid-19, but Defendant Mayo refused, even though

Defendant Mayo had a policy of testing its employees for antibody protection from Covid-19.

36.     Plaintiff Hebrink contracted Covid-19 in approximately November, 2021. As a result, pursuant to Defendant Mayo's policies, Plaintiff could not take the Covid-19 vaccine until 90 days after she had contracted Covid-19.  At the end of the 90 day period, Defendant Mayo again demanded that Plaintiff Hebrink take the Covid-19 vaccine.  After Plaintiff Hebrink refused, Defendant Mayo terminated Plaintiff Hebrink's employment with Defendant Mayo on March 25, 2022.  At that time, as set forth below, Defendant Mayo was not requiring its unvaccinated employees who had obtained religious exemptions from undergoing any further testing in order to continue working at Defendant Mayo.

37.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Warne requested a religious exemption from Defendant Mayo's Vaccine Mandate, which Defendant Mayo denied.  Plaintiff Warne also submitted a request for reconsideration from Defendant Mayo of its denial of the request for Plaintiff Warne's religious exemption.  Defendant Mayo denied Plaintiff Warne's request for reconsideration.  Defendant Mayo did not provide Plaintiff Warne with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Warne's request for reconsideration.

38.     Plaintiff Warne is a Christian and believes that taking the Covid-19 vaccine would violate her religious beliefs.  Plaintiff Warne is a believer in Jesus Christ, Lord and

Savior, believes the tenets of Holy Scripture that her body is a Temple of the Holy Spirit.

To put the vaccine into her body, which is made in the image and likeness of God and has

its own immunity system, would violate her conscience and what God has revealed to

her, and it would be a sin.

39.     Plaintiff Warne received positive job performance reviews including that

she was an "expert nurse," and a "phenomenal nurse."  At her termination her manager

was tearful and stated,

> "I don't agree with Mayo.  Never, would I have guessed it would come to
> this, especially since we are already short staffed.  I don't know how we
> can afford to lose nurses." "I can't believe I have to let you go, this is all so
> ridiculous."
>
> On the day of her termination patients and their families today told her how
> wonderful she was and how thankful they were for the care she provided.
> One patient pleaded, "Please don't let Carrie go!"

40.     Consistent with Defendant Mayo's instructions that employees could

request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Klein requested

a religious exemption from the Vaccine Mandate, which Defendant Mayo Northwest

denied.  Plaintiff Klein also submitted a request for reconsideration.  Defendant Mayo

Northwest denied Plaintiff Klein's request for reconsideration.  Defendant Mayo

Northwest did not provide Plaintiff Klein with the criteria it used in evaluating his request

for a religious exemption from the Vaccine Mandate, nor did Defendant Mayo Northwest

provide specific information regarding the reasons for the denial of Plaintiff Klein's

request for a religious exemption.

41.     Plaintiff Klein is a Christian who believes based upon his interpretation of Christian Scripture that he cannot take the Covid-19 vaccine.  Plaintiff Klein is a believer in Jesus Christ, Lord and Savior, and believes the tenets of Holy Scripture that whatever he does in life will be called into account, including what he does to his body.  Plaintiff Klein believes his body is made in the image and likeness of God, and to take the Covid-19 vaccine would be a sin.  Additionally, Plaintiff Klein cannot, consistent with his conscience or religious beliefs, receive the Covid-19 vaccine, because the vaccines were produced with or tested with cells from aborted human babies.

42.     Plaintiff Klein received positive job performance reviews from Defendant Mayo Northwest.

43.     Consistent with Defendant Mayo Foundation's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Rohde requested a religious exemption from Defendant Mayo Foundation, which Defendant Mayo Foundation denied.  Plaintiff Rohde also submitted a request for reconsideration from Defendant Mayo Foundation of its denial of the request for a religious exemption. Defendant Mayo Foundation denied Plaintiff Rohde's request for reconsideration. Defendant Mayo Foundation did not provide Plaintiff Rohde with the criteria it used in evaluating his request for a religious exemption nor did Defendant Mayo Foundation provide specific information regarding the reasons for the denial of Plaintiff Rohde's request for a religious exemption.

44.     Plaintiff Rohde is a Christian who believes, based on her interpretation of Scripture, that her body is a Temple of the Holy Spirit and must not be tampered with.

11

Taking its vaccine would make her body unclean and would violate her conscience to take the Covid-19 vaccine.

45.     Plaintiff Rohde received positive job performance reviews from Defendant Mayo Foundation, including that "[Plaintiff] Shay is a wealth of knowledge and always willing to help others."

46.     Though Plaintiff Rohde's religious exemption was denied and she was terminated at age 42, younger, and lower paid co-workers' religious exemptions were granted.

47.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Schlotzhauer requested a religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Schlotzhauer also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo granted Plaintiff Schlotzhauer's request for reconsideration, but conditioned it on supervised Covid-19 testing each week.  Plaintiff Schlotzhauer's request for a religious exemption to the testing was denied. Defendant Mayo did not provide Plaintiff Schlotzhauer with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Schlotzhauer's request for a religious exemption to testing.

48.     Plaintiff Schlotzhauer is a Christian believer in Jesus Christ, Lord and Savior. She believes the tenets of the Holy Scriptures that whatever she does in life will be called into account. She believes her body is made in the image and likeness of God.

12

She believes a person has the right to freely decide what to put into his or her body.  Each human is made in the image and likeness of God, with a conscience, and that mandating the Covid-19 vaccination violates her personhood.  Further, Plaintiff Schlotzhauer objects to participating in the practice of killing human babies and, because the Covid-19 vaccines are produced with or tested with the cells of aborted human babies, as are the testing kits.  Thus, for Plaintiff Schlotzhauer to receive the Covid-19 vaccine or testing would violate Plaintiff Schlotzhauer's religious beliefs.

49.     Plaintiff Schlotzhauer received positive job performance reviews from Defendant Mayo, including that: "[Plaintiff] Joanne's a highly skilled nurse, while at the same time being the most compassionate and caring nurse I have ever worked with."

50.     Plaintiff Scholtzhauer worked remotely during several months of the Covid-19 pandemic.  Plaintiff Scholtzhauer offered to continue working remotely, but Defendant Mayo refused that offer of accommodation in order to accommodate Plaintiff Scholtzhauer's request for a religious exemption from taking the Covid-19 vaccine.

51.     Plaintiff Scholtzhauer has worked with numerous patients who have suffered illnesses shortly after receiving the Covid-19 vaccines, including frequent blood clotting.  Plaintiff Schlotzhauer knows a neighbor who suffered blood clots in the lungs and passed away, after receiving the Covid-19 vaccine.

52.     Plaintiff Schlotzhauer was more experienced and higher on the pay scale, and believes her termination was the result of her higher rate of pay.

53.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Styndl requested a

religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Styndl also attempted to submit a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Styndl's attempts to request reconsideration.  Defendant Mayo did not provide Plaintiff Styndl with the criteria it used in evaluating his request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Styndl's request for a religious exemption.

54.     Plaintiff Styndl is a Christian who believes, based on her interpretation of Scripture, that her body is a Temple of the Holy Spirit and it would violate her conscience to take the vaccine.  Through prayer God has told her not to get the Covid-19 vaccine. As part of her Christian beliefs, Plaintiff Styndl believes it is her responsibility to take care of her body and make responsible decisions about what to put into her body. As part of her Christian beliefs, Plaintiff Styndl also believes that it would be sinful to take the Covid-19 vaccines, because the Covid-19 vaccines were produced with or tested with aborted human baby cells, and that to take the Covid-19 vaccine would make her complicit in killing the unborn babies from whom the cells were taken.

55.     During her 20 years of employment with Defendant Mayo, Plaintiff Styndl received positive job performance reviews, including that "Michele is very good at what she does and an asset to the Specialist Team," and she "has an excellent knowledge of all she does."

56.     Plaintiff Styndl believes she was terminated because of her age, 42, and high rate of pay (she was at the top of the pay scale) due to her seniority with Mayo.

14

57.     Plaintiff Styndl has been teleworking for the last five years, and has worked completely remotely for Mayo the last nearly two years, with no contact with patients or other employees, and thus posed no risk of passing Covid-19 to patients or employees.

58.     After Defendants had told Plaintiffs that Defendants had denied their requests for religious exemptions and requests for reconsideration, Defendants also instructed the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification.*"

59.     Defendant Mayo terminated Plaintiff Hebrink on March 25, 2022.  Plaintiff Hebrink filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Hebrink a Right to Sue letter dated March 31, 2022.

60.     Defendant Mayo terminated Plaintiff Warne on January 3, 2022.  Plaintiff Warne filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Warne a Right to Sue letter dated March 31, 2022.

61.     Defendant Mayo Northwest terminated Plaintiff Klein on January 3, 2022. Plaintiff Klein filed charges of discrimination with the EEOC, and the EEOC issued Plaintiff Klein a Right to Sue letter dated April 1, 2022.

62.     Defendant Mayo Foundation terminated Plaintiff Rohde on January 3, 2022.  Plaintiff Rohde filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Rohde a Right to Sue letter dated April 1, 2022.

63.     Defendant Mayo terminated Plaintiff Schlotzhauer on February 18, 2022 for refusing to sign a release of information.  Plaintiff Schlotzhauer filed a charge of

discrimination with the EEOC, and the EEOC issued Plaintiff Schlotzhauer a Right to Sue letter dated April 1, 2022.

64.   Defendant Mayo terminated Plaintiff Styndl on January 3, 2022.  Plaintiff Styndl filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Styndl a Right to Sue letter dated April 1, 2022.

65.   Defendants created an ad hoc panel to review exemption requests for taking the Covid-19 vaccine. As noted above, each of the Plaintiffs submitted requests for an exemption, but Defendants denied nearly every Plaintiffs' request for religious exemption, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

66.   As a result of Defendants' policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including each of the Plaintiffs, who all refused to be injected with the Covid-19 vaccine and whom Defendants terminated as a result.

67.   In issuing the denials for requests for a religious exemption from taking the Covid-19 vaccine, Defendants sent such employees, including Plaintiffs, the same boilerplate language:

> "*Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation*."

68.   Defendants conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or

16

possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendants' processes for evaluating religious exemptions, or requests from employees seeking a religious exemptions to taking the Covid-19 vaccine, Defendants wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision."  Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs' religious beliefs, or attempt any reasonable accommodation, Defendants sent its employees more boilerplate language to justify its pre-determined result:

> "*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine*."

69. Defendants actually specifically disavowed an individual interactive process for evaluating requests for a religious exemption to taking the Covid-19 vaccine writing: "Specific feedback on individual requests will not be provided, it is not possible to provide individual feedback."

70. Plaintiffs sought further clarification of Defendants' criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendants determining that each of the Plaintiffs did not have a "sincerely held religious belief."  However, Defendants refused to respond to these individual requests for

clarification and rather simply sent each of the Plaintiffs the identical generalized language in Defendants' letters.

71.     In their form denial letters, Defendants announced that they would accept appeals of their uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*."  Each of the Plaintiffs took advantage of that process and submitted additional information to Defendants.

72.     Following each of the Plaintiffs' requests for reconsideration of their requests for a religious exemption to taking the Covid-19 vaccine, Defendants again issued identical denial letters to each of the Plaintiffs and nearly every employee who appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine. Defendants' transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation*."  Again, Defendants engaged in no interactive process to evaluate the requests for religious exemptions.

73.     Defendants did not provide information to its employees, including each of the Plaintiffs, about how Defendants determined whether the religious beliefs of those employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

74.     Defendants' original denial of each of the Plaintiffs' requests for a religious exemption and Defendants' denial of each of the Plaintiffs' requests for reconsideration of the denial of their requests for a religious exemption to taking the Covid-19 vaccine

contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification*."

75.     Defendants further instructed its employees to *"endorse the vaccine or say nothing."*

76.     Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendants' *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendants made no effort to accommodate their requests for a religious exemption. Further, Defendants never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate.

77.     Defendants, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

78.     Defendants issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

79.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

80.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

81.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendants have done as set forth above.

82.     Early on in the Covid-19 pandemic, and before any vaccines were available, Defendants provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

83.     Rather than disclosing the results of its determination on the numbers of Defendants' "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendants have not made public this information and instead simply issued its Vaccine Mandate.

84.     On March 8, 2022, Defendants announced it would suspend the testing program portion of its Vaccine Mandate.  As a result, Defendants' remaining unvaccinated employees are now treated similarly to vaccinated employees.

20

85.     After terminating each of the Plaintiffs, Defendants suspended weekly testing effective March 14, 2022.  This means that employees who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 8, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendants have now determined was unnecessary.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

86.     Plaintiffs restate and reallege paragraphs 1 through 85 as if fully set-forth herein.

87.     Each Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

88.     Each of the Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

89.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

90.     Each Plaintiff informed his or her respective employer Defendant of the conflict between their religious beliefs and taking the Vaccine Mandate.

91.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

21

92.     The Act prohibits Defendants from scrutinizing what the Defendants believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

93.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

94.     In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendants and their ad hoc panel applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

95.     Despite the Plaintiffs' consistent requests for Defendants to engage in an interactive process regarding their requests for accommodation, Defendants refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests for an exemption for identical reasons as other of the Defendants' employees using an identical form letter.

96.     As set forth above, Defendants could have accommodated Plaintiffs' requests for a religious exemption without suffering any undue hardship by having them

22

continue to do their job the same as they had done for the last one and one-half years of their employment.

97. Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

98. Because of Defendants' unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA §363A.08

99. Plaintiffs restate and reallege paragraphs 1 through 98 as if fully set-forth herein.

100. Minn. Stat. §363A.01, et seq. prohibits discrimination in employment based on religion.

101. Defendants are "employers" within the meaning of Minn. Stat. §363A.01.

102. Plaintiffs are "employees" within the meaning of Minn. Stat. §363A.01.

103. Plaintiffs have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine.

104. Plaintiffs informed their respective Defendant employers of the conflict between their religious beliefs and the Vaccine Mandate.

105.    Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

106.    Minn. Stat. §363A.01 et seq. prohibits Defendants from scrutinizing what it believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

107.    In response to the Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, Defendants' *ad hoc* panels applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

108.    Despite Plaintiffs' requests for their respective Defendant employer to engage in dialogue regarding their respective requests for a religious exemption, each of the respective Defendants refused throughout to engage in the interactive process, and instead Plaintiffs' employer Defendant terminated each of these Plaintiffs for generalized reasons, using identical form letters.

109.    Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. §363A.01 et seq.

110.    Because of Defendants' unlawful actions, Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including

front pay, back pay, emotional distress damages, compensatory damages, punitive

damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

111.    Plaintiffs restate and reallege paragraphs 1 through 110 as if fully set-forth

herein.

112.    Each Defendant is an "employer" within the meaning of 42 U.S.C.

§12111(5)(A).

113.    Each of the Plaintiffs was an "employee" of their respective Defendant

employer within the meaning of 42 U.S.C. §12111(4).

114.    The ADA, at 42 U.S.C. §12112 (d)(4)(a), prohibits employers from

requiring current employees to undergo medical examinations or inquires unless it is job

related and consistent with business necessity.

115.    Defendants' Vaccine Mandate violated 42 U.S.C. §12112 (d)(4)(a).

116.    As a result of Defendants' actions in violation of the ADA, Plaintiffs

suffered and continue to suffer economic and other damages in amounts to be proven at

trial, including front pay, back pay, emotional distress damages, compensatory damages,

punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute

### (Limited to the Minnesota Employee Plaintiffs)

25

117.    Plaintiffs restate and reallege paragraphs 1 through 116 as if fully set-forth herein.

118.    Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id.* §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… *individuals* have a f*undamental right* to *refuse* medical treatment, testing, physical or mental examination, *vaccination*, participation in experimental procedures and protocols, …".  *Minn. Stat. §12.39, Subd. 1* (emphasis added).

> Further, "before performing … vaccination of an individual … a *health care provider* shall *notify the individual* of the *right to refuse* the … *vaccination*, …".  *Minn. Stat. §12.39, Subd. 2 (*emphasis added*).*

119.    Plaintiffs are "individuals" who have a "fundamental right" to "refuse medical treatment" and "vaccinations."

120.    Each Defendant is a "health care provider" (*Minn. Stat. §12.39, Subd. 2*), who is obligated to "notify the individual of the right to refuse vaccinations."  Further, the underlying policy applies to "private agencies of every type" (*Minn. Stat. §12.02, Subd. 2*).

121.    The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

122.    Plaintiffs have objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is

26

protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiffs' refusal to accede to Defendants' Vaccine Mandate, Plaintiffs have been harassed, suspended, discharged (explicitly or constructively), and had their earned benefits taken away.

123.   Defendants' actions in punishing the Plaintiffs for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendants admitted in 2021 that Covid-19 vaccinations could not be mandatory and must instead be voluntary.

124.   Defendants partially changed their policy in October, 2021. Subsequently, in March, 2022, Defendants changed their Vaccine Mandate again to no longer require weekly testing for unvaccinated employees.

125.   As a result of Defendants' illegal actions taken against Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

126.   Plaintiffs restate and reallege paragraphs 1 through 125 above as if fully set-forth herein.

127.   Defendants had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

128.   Defendants wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

129.   Defendants' policies and statements created a contract between it and its employees.

130.   Each of the Defendants' actions in terminating the respective Plaintiff who worked for one of the Defendants, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

131.   Plaintiffs have been damaged by Defendants' breach of contract.

132.   In the alternative, Defendants' promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to their detriment. Defendants' promises to its employees, including Plaintiffs, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendants for an Order of the Court as follows:

1.   Adjudging that Defendants are liable to each of their respective employee Plaintiffs for their actual damages in an amount to be proven at trial, including front pay,

back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.    Enjoining Defendants from taking further illegal action against each of the Plaintiffs in violation of both state and federal law, and Ordering each Defendant to take action to restore each of their respective employee Plaintiffs to their positions they would have enjoyed absent Defendants' illegal conduct;

3.    Awarding each of the Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.    Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not heave a scientific basis.

Dated: June 29, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
William F. Mohrman, 168816
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
Email: mohrman@mklaw.com

*Attorneys for Plaintiffs*